UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Criminal Action No. 05-cr-00141-MSK

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    LEE ARTHUR THOMPSON, a/k/a "LT,"
2.    ALVIN HUTCHINSON, a/k/a "BIG AL,"
3.    JORGE BANUELOS,
4.    CECILIA LOZANO,
5.    DENISE GUTIERREZ,
6.    KENNETH PRIEN, a/k/a "KENNY,"
7.    RONALD DEAN DEHERRERA, a/k/a "DINO,"
8.    WILLIAM L. GLADNEY, a/k/a "L,"
9.    STEVEN LAMONT ELLIS,
**10.    JUNIOR RAY MONTOYA, a/k/a "JR. RAY,"**
**11.    JESSICA CRUTHERS,**
12.    PAUL ROSE, JR.,
13.    DAVID ZAMORA,
14.    STEVE ZAMORA, and
15.    MILTON A. YON,

      Defendants.

---

**ORDER DENYING MOTIONS FOR MISTRIAL,
DENYING MOTION TO DISMISS COUNTS, AND
DENYING MOTION FOR SEPARATE TRIAL**

---

THIS MATTER comes before the Court on several oral motions for mistrial made during the joint trial of Defendants Cecilia Lozano, Junior Ray Montoya, and Jessica Cruthers. Ms. Lozano has withdrawn her motions. Therefore, all that remains are the motions by Mr. Montoya and Ms. Cruthers. The Court has considered these motions, the Government's oral response, and the parties' written submissions **(#832, #834)**.

Also before the Court is Defendant Cruthers' Motion to Dismiss Counts Three and Twenty (#826) and her Motion for New Trial Separate from Any Co-Defendant (#827), to which the Government has responded (#833, #834) and Ms. Cruthers has replied (#856).  Having also considered these, the Court finds and concludes as follows.

## I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 18 U.S.C. § 3231.

## II. Background

A trial was held between June 12 and July 5, 2006, as to the Counts asserted against Defendants Lozano, Montoya and Cruthers. The jury reached its verdict as to Ms. Lozano on June 30, 2006.  As to Mr. Montoya and Ms. Cruthers, it reached a verdict on July 5, 2006.

Mr. Montoya was charged in Counts 3 (Conspiracy to Possess with the Intent to Distribute a Controlled Substance), 4 (Distribution and Possession with the Intent to Distribute a Controlled Substance) and 5 (Distribution and Possession with the Intent to Distribute a Controlled Substance).  During his opening statement and closing argument, Mr. Montoya's attorney conceded that Mr. Montoya had sold drugs twice during July 2004 but contended that Mr. Montoya was not guilty of the conspiracy count.  The jury became hopelessly deadlocked on the conspiracy charge but convicted Mr. Montoya on the two distribution charges.

Ms. Cruthers was charged in Counts 3 (Conspiracy to Possess with the Intent to Distribute a Controlled Substance) and 20 (Distribution and Possession with the Intent to Distribute a Controlled Substance). Again, the jury was hopelessly deadlocked on the conspiracy charge.  However, it convicted Ms. Cruthers on the distribution charge.

During the trial, the Defendants made various oral motions for mistrial which the Court

took under advisement.  The first set of motions[1] pertains to two suspicious telephone calls that

jurors received during the trial. The Defendants contend that the calls tainted the jury's ability to

be fair and impartial.

The second set of motions[2] deals with several exhibits (Ms. Cruthers' Exhibits 35, 61 and

70) depicting alleged members of the conspiracy on a tiered organizational structure chart.  Ms.

Cruthers originally sought to show Exhibit 35[3] to the jury for purposes of demonstrating that she

was not a member of the conspiracy.  Exhibit 35, which was prepared by officers during their

investigation, had pictures of individuals placed next to their position in the organizational

structure.  The photographs of purported members of the conspiracy were depicted inside of

---

[1] These were made on the eighth day of trial, June 22, 2006.

[2] These were made on the ninth and tenth days of trial, June 23 and 27, 2006.  Related to the second set of motions were oral motions to sever made by Mr. Montoya, as well as a subsequent written motion (**#827)** by Ms. Cruthers.

[3] Exhibit 61 was the large version of the chart, and Exhibit 35 was a photocopy of the chart.  For purposes of this ruling, the Court refers only to Exhibit 35.

boxes, and the photographs of purported non-members were depicted outside of any boxes.

Exhibit 35 is shown below:



The Court concluded that Exhibit 35 was unfairly prejudicial to Ms. Cruthers' co-

defendants because their photographs were depicted inside the boxes, and the exhibit could not be

admitted to prove that they were members of the conspiracy.  However, the Court also concluded

that Ms. Cruthers was entitled to show that, at least at one point, she was not considered to be a

member of the conspiracy.  Therefore, the Court allowed Ms. Cruthers to offer a redacted version

of the chart, which is Exhibit 70.

Exhibit 70 was a handdrawn exhibit which appeared substantially[4] as follows:



Unlike the chart depicted in Exhibit 35, the chart shown in Exhibit 70 contained no photographs. Instead, Sgt. Coshall testified where the photographs were located in the original, unredacted chart and affixed post-it notes to their corresponding locations.

Ms. Cruthers argued that, like Exhibit 35, Exhibit 70 would show that she was not a member of the conspiracy because her photograph was not contained in any of the boxes and instead appeared outside the box containing the photograph of Mr. Hutchinson.  Mr. Montoya objected to Exhibit 70 on the basis that that the jury could still impermissibly infer from it that he was a member of the conspiracy.  Over Mr. Montoya's objection, the Court allowed Ms. Cruthers

---

[4] The following graphic is a computerized depiction of Exhibit 70, which was too large to be scanned into pdf format.

to show Exhibit 70 to the jury in conjunction with Sgt. Coshall's testimony.

The third set of motions for mistrial[5] challenge a comment made by the Government's attorney during closing argument which likened the Defendants to vampires, which the Defendants argued were prejudicial.  From Ms. Cruthers, the Court also received a motion **(#826)** to dismiss Counts 3 and 20 on the basis that the prosecutor's reference to vampires in closing argument was improper.  She argues that a retrial on Counts 3 and 20 should be barred by the Double Jeopardy Clause because of improper conduct by the Government's attorney necessitating a mistrial.  Mr. Montoya submitted a comprehensive brief arguing that several additional comments by the prosecutor during closing argument were improper, and that a retrial should be barred by the Double Jeopardy Clause.

The last set of motions pertain to jury instructions. The Defendants move for a mistrial on the basis that they believe the Court's instruction allowing for a partial verdict and subsequent *Allen*[6] charge encouraging the jurors to deliberate was coercive.

### III.  Issue Presented

The first issue presented is whether the verdict against Mr. Montoya and Ms. Cruthers must be set aside and a mistrial declared.  If the verdict is set aside, the following issue is whether a retrial of Counts for which there has been a mistrial (including the conspiracy count) is prohibited by the Double Jeopardy Clause.

### IV.  Analysis of Motions

The Due Process Clauses of the Fifth and Fourteenth Amendments to the United States

---

[5] These were made on the tenth day of trial, June 27, 2006.

[6] *Allen v. United States*, 164 U.S. 492 (1896).

Constitution guarantee that every defendant in a criminal case will receive a fair trial. *See United States v. Gabaldon*, 91 F.3d 91, 93-94 (10th Cir. 1996). If a trial is not fair, a defendant is entitled to move for a mistrial. A motion for mistrial can be premised upon a variety of circumstances – for example, lack of a fair and impartial jury, improper argument by the Government's attorney, coercive jury instructions or the like. *See United States v. Black*, 369 F.3d 1171 (10th Cir.), *cert. denied*, 543 U.S. 937 (2004); *Gabaldon*, 91 F.3d at 93-94.

In evaluating a motion for mistrial, a court first determines whether an error was made. *See United States v. Pulido-Jacobo*, 377 F.3d 1124, 1133 (10th Cir.), *cert. denied*, 543 U.S. 1030 (2004). If so, then it examines whether the error impaired the defendant's constitutional right to a fair and impartial trial. *See id.* This requires examination of the prejudicial impact of the error or errors within the context of the entire case. *See Gabaldon*, 91 F.3d at 94.

## 1. Telephone Calls

The first set of mistrial motions concern suspicious telephone calls received by two jurors during the course of the trial. The first was a voice message left on a juror's cell phone from a man she did not know. He purported to be calling about the woman's sister, "Vanessa Gutierrez." He left a telephone number in the message. The call was suspicious to the juror because she did not know the caller and Gutierrez was the last name of one of the government's witnesses, a co-defendant in the case who negotiated a plea and sentence based upon her cooperation and testimony.

The juror brought this telephone call to the attention of the Courtroom Deputy, who advised the Court. At that juncture, the Court examined the juror in the courtroom in the presence of the attorneys, who were given an opportunity to request that specific questions be

asked.  The Court and the juror engaged in the following colloquy:

THE COURT: I understand that you have received a telephone call, or I should say a message on your phone that you found disturbing; is that right?

JUROR: That is correct.

THE COURT: Can you tell me what it was that you heard and why you found it disturbing?

JUROR: A gentleman called and said that he believed that I was the sister of a name that I -- last name that I recognized during this case, talking about that it was some important matter having to deal with -- it was from a housing or something I couldn't quite understand what the company was that he was with, but it was an important matter and that I needed to get the message to this lady to call him back. And he left a phone number.

THE COURT: All right. And are you aware of the -- do you know the person who called you?

JUROR: Not at all.

THE COURT: And the name you recognized was a name you thought was associated with this case?

JUROR: The last name was familiar with this case.

THE COURT: All right. What I'd like you to do is to pull that microphone close to you and I'd like you to play for us, if you would, the message that you're referring to.

JUROR: Is this on?

THE COURT: Just hold it right up next to the phone.

JUROR: Okay.

(Phone message played.)

THE COURT: Thank you. Have you returned this call?

JUROR: No.

8

THE COURT: Have you discussed this call with anyone else on the jury?

JUROR: I had one other member listen to it because I didn't know if I was hearing something correctly.  And she said, "I would report this," and I said, "Okay."

THE COURT: All right. . . .

THE COURT: Ms. [T],[7] at this point I don't have any reason to believe you should be concerned.

JUROR: Okay.

THE COURT: What I need to ask you is whether you think you can put this telephone message out of your mind and consider the evidence as it's been presented without considering this.

JUROR: Yes, ma'am, I can.

The juror then identified the other juror who had listened to the phone message.  The Court then

stated:

THE COURT: What I'm going to do is to instruct you that you may not discuss this phone message with anyone –

JUROR: Uh-huh. Okay.

THE COURT: -- on the jury. And I'm going to instruct you to disregard this phone message.

The juror was then escorted to chambers while the second juror was brought into the courtroom.

The Court inquired of the second juror with regard to the telephone call, as follows:

THE COURT: Ms. [A] I've been advised that Ms. [T] shared a telephone message that was left on her cell phone with you. Did you listen to that message?

JUROR: Yes, I did.

---

[7] In accordance with the Court's Privacy Policy found at Section IX of the Electronic Case Filing Procedures for Criminal Cases, all references to jurors' names are redacted.

THE COURT: And have you discussed that message with anyone else?

JUROR: I did mention it to a couple of the jurors. . . .

THE COURT: All right. Ms. [A], I don't have any reason to believe that that phone call is threatening to you or to anyone else on the jury. If I instruct you to disregard it, do you think you can do that?

JUROR: Yeah.

THE COURT: Can you continue to be fair and impartial in this case?

JUROR: Yes. . . .

At that juncture, all defense counsel moved for a mistrial.  One attorney expressed his concern that the first juror was terrified by the message.  Because it appeared that several jurors knew about the telephone call, the Court called the entire jury into the courtroom.  The Court advised the jury as follows:

Ladies and gentlemen of the jury, some of you may be aware that [Ms. T] received a telephone message on her cell phone that gave her some pause. She was concerned that it might have something to do with this case, and she may have discussed it with you, or you may have heard about that from another juror.

I have had the opportunity to inquire of [Ms. T] and to also listen to the message, as have counsel in this case. I have no reason to believe that there is anything threatening about this message. I don't believe it is related to this case in any way.  I have asked our Marshal's Service to follow up on the message to ascertain whether there is anything to be concerned about; but I said, I have no reason to believe that is the case.

Now, what is important for you is that we would like to proceed with this trial. And I want to reassure you that at this point I do not think that the message should be of concern to you. I ask you at this time to disregard it, if you've heard anything about it; and if you haven't heard anything about it, not to be concerned about it.

10

Once the case has been fully presented, as you know, there are 14 of you, and I will ask a question as to whether there is anyone who is unable to serve for purposes of deliberation.  Should you have any residual concerns about this phone message that would keep you from being fair and impartial, please let me know at that time.[8]

In constructing this advisement, the Court considered the decision in *United States v. Duckworth*, 565 F. Supp. 989 (N.D. Ind.  1983), in which jurors had received threatening telephone calls during the middle of the night.  The state trial judge in *Duckworth* stated to the jury:

It was brought to my attention just prior to our beginning this morning that at least two jurors received telephone calls at approximately 1:00 last night. They were, at best, suspicious. Perhaps, attempted intimidation. Did any other juror receive calls last night that was in any way suspicious? (Pause) After discussing these calls with the recipients, I feel I should instruct you how to respond to that sort of situation if it happens again to any of you. I have instructed the Sheriff's Department to uh, be aware of where you live and to uh, patrol your uh, residence particularly. For that purpose the Sheriff shall have a Deputy here at the time we recess this afternoon to talk to each of you for the purpose of obtaining your address and uh, specific direction on exactly where it is you live so there can be no mistake. If any of you should receive a phone call, you should call the uh, you should terminate the call as soon as it becomes at all suspicious to you if you don't recognize the caller. And you should call the Sheriff's Department at once after you terminate the call. Discussion with the jurors indicated that there is no way of knowing who the caller was. Each call was terminated well before that could have been determined. There was no discussion of any specific subject and uh, so there is no way to say where the call came from or who it came from. As likely an explanation as any is that it was some prank who is getting some

---

[8]Upon investigation, the United States Marshal learned that the telephone call to Juror [T] was made by an individual working with the Boulder County Housing Authority. The call had no connection with this case. Indeed, the caller had not intended to call the juror in this case.  This information was imparted to the attorneys.  No party requested that the jury be further advised.

> kind of a cheap thrill out of that sort of a situation. You should not
> in any way allow the fact that these calls were made last night to
> interfere with your attention to the matters that transpire in this
> Court Room and you should specifically not let them enter into uh,
> your consideration in any way by speculating about where they
> might have come from or who may have made them at the time you
> deliberate. Call your next witness.

On federal habeas review, the district court concluded that there was nothing improper about the

procedure used by the trial judge, noting that "the trial judge made it clear that the nature and

purpose of the phone calls were ambiguous and could have been made for different reasons." *Id.*

at 991-92.

Later the same day, another juror reported to the Courtroom Deputy that she received

three telephone calls from a Spanish-speaking caller during the past two weeks. The juror was

brought into the courtroom and the following colloquy ensued:

> THE COURT: Ms. Nelson advises me that you have advised her that you
> have received some telephone calls about which you had some concern; is that
> right?
>
> JUROR: I just felt it was relevant since [M] had her phone call –
>
> THE COURT: And can you tell us –
>
> JUROR: -- just to let you know that I had.
>
> THE COURT: Can you tell us what phone calls you're referring to?
>
> JUROR: I had one last week and two this week. And when I answered the
> phone, they just spoke in Spanish. And I said, I don't speak Spanish, and had hung
> up.
>
> THE COURT: Have you discussed this with other members of the jury?
>
> JUROR: I did. Well, last week I had asked if anyone else had gotten that
> kind of a call. And then after I spoke with Ms. Nelson and I went back in the
> room they said, Oh, did you get some calls? And I said, Yeah.

THE COURT: So this -- the getting calls has been a subject that the jury has discussed as a group. Is that right?

JUROR: Just now a little bit. . . .

THE COURT: Ms. [B], at this time, do you think those telephone calls will keep you from being fair and impartial?

JUROR: No. I did not feel threatened.

THE COURT: All right. Then I ask you not to further discuss those telephone calls with members of the jury.

JUROR: Yes.  Ms. Nelson talked to us about it, too, not to discuss.  I'm sorry.

THE COURT: Thank you for bringing it to Ms. Nelson's attention.  All right.  We'll call the jury in.

The Court did not give the jury an instruction at that time with regard to the Spanish telephone calls.

After closing arguments, the Court stated to the jury: "I promised you that before we began [the deliberation] process I would inquire if all the jurors were fit to deliberate.  Is there anyone among you who is not fit to deliberate at this time?"  No juror answered that question in the affirmative.  Therefore, the Court excused the alternate jurors and submitted the case to the jury for deliberation.

The Court finds that the telephone calls to the two jurors did not impact their ability to be fair and impartial jurors in this case.  At the time the issue arose, both jurors stated that they could put the telephone calls out of their minds and would not consider them in their deliberations.  Prior to submission of the case, as promised, the Court inquired as to whether the jurors were fit to deliberate. No juror responded that, because of the telephone calls, they could not.

The verdicts reached in this case suggest that the telephone calls had no influence upon the jury. The jury rendered separate verdicts as to all three defendants, convicting Ms. Lozano on two counts and acquitting her on the conspiracy charge, convicting Ms. Cruthers and Mr. Montoya on possession/distribution charges and becoming deadlocked on the conspiracy count. The combination of the verdicts suggests that the jury carefully followed the Court's instructions to evaluate every charge against every Defendant, individually. The convictions on the possession/distribution counts and the variance in the outcome on the conspiracy charge suggests that the jury was not, in any way, influenced by fear. Therefore, the Court concludes that the telephone calls to the jurors did not deprive the Defendants of a fair trial.

**2. Exhibit 70 - Organizational Chart**

The second set of mistrial motions is directed at Ms. Cruthers' Exhibit 70, which is a chart of the Alpine Rose Organization prepared by Sergeant Guy Coshall. This exhibit was received only for demonstrative purposes at trial after being redacted and was not provided to the jury during its deliberation.

During trial, Ms. Cruthers used Exhibit 70 to show that she was not one of the individuals who was depicted inside of a box and, hence, not a member of the conspiracy. Mr. Montoya moved for a mistrial based upon Ms. Cruthers' use of this exhibit. The sole relevance of this exhibit was as to the conspiracy charge. The jury was unable to reach a verdict on this charge against Mr. Montoya. Therefore, his motion for mistrial on this basis is denied.

During the trial, Ms. Cruthers requested separate trials based upon her use of this exhibit, as she felt restricted in her ability to use it. Given the timing of the motion, the Court treats it as a motion for mistrial based upon Ms. Cruthers' joint trial with Mr. Montoya and Ms. Lozano.

14

Because the jury was unable to reach a verdict on the conspiracy charge against Ms. Cruthers, her motion for mistrial on this basis is denied.

After the trial, Ms. Cruthers filed a written motion (**#827**) requesting that any future trial be separate from the trial of her co-defendants. She contends, *inter alia*, that she was impermissibly limited in her ability to use the organizational chart during the trial. She anticipates that in any future trial, her ability to cross-examine and confront witnesses will be limited if she offers the organizational chart as evidence.

The written motion for a separate trial is denied, as premature. No trial has been set on the remaining count against Ms. Cruthers, and at this juncture, it is impossible to determine whether she will be tried with anyone else. The Court will not speculate as to which Defendants will be tried together with Ms. Cruthers or what evidence will be offered at that trial.

### 3. Comments in Closing Argument

The third set of motions is premised upon allegations that the prosecutor made improper comments during closing argument, in particular:

> You know, when I think in terms of what took place in here, I think about something I read once. And it went something like this: When a murderer strikes a blow, the person dies one time; but drug dealers, they're like vampires. They bite their victims, who create others like them, who create others like them, down the generations, across the land, leaving not even the unborn untouched.
>
> What you have here are vampires - - . . .
>
> I'm certain that not one of the defendants likes it; but it was Mr. Eldridge that went through slowly and told you about how he felt as a drug user, his opening: Here's my day. I have to have crack. I've got to get it because if I don't, there it is. You go out and you sell to another person and that person has got to have it.

15

> And if that person sells to another person, that person has got to
> have it. So tell me ladies and gentlemen, I'll ask you the question:
> Who is a little person in that conspiracy? Who is the person that
> doesn't affect another's life in the same way that theirs was affected?
>
> These folks. You decide on whether they created another
> like themselves. You've taken your notes. It's there.  You've heard
> the evidence. You know. And if you don't use your common sense
> and your logic and follow the Judge's instructions about the law,
> then you're the ones that let the Government of the United States'
> people down, as Mr. Jurdem has suggested that you not do.

At this juncture, Mr. Montoya's counsel objected and renewed his motion for a mistrial, stating that the argument was improper because it suggested that Mr. Montoya could be convicted simply because he was a drug addict.  Ms. Cruthers' counsel also objected, characterized the comment as prosecutorial misconduct, and moved for a mistrial.  The Court then instructed the jury: "I remind you that closing arguments, like every other argument in the case, is not evidence.  You're to consider the evidence and the law in making your determinations."

The Defendants ask the Court to declare a mistrial based upon this comment.  The Government responds that the comment is supported by caselaw observing the impact of drug dealing on the citizenry.

The Court must determine whether this reference in closing argument requires a mistrial. The initial issue presented is whether the comment was improper.  *See Pulido-Jacobo*, 377 F.3d at 1134.  If so, then the Government bears the burden of establishing that the error was harmless beyond a reasonable doubt.  *Id.*   Whether an error was harmless depends upon whether a court gave a curative instruction to the jury, whether the error was extensive, and the juncture of the

case at which it occurred.  *Id.*

A similar issue was addressed by the Tenth Circuit in *United States v. Janus Industries*, 48 F.3d 1548 (10th Cir. 1995).  In *Janus*, the prosecutor stated during closing argument: "Make no mistake about the intent of Mr. Janus.  Make no mistake.  This [sic] items are evil from their conception and they were going to be used for an evil purpose."  The Tenth Circuit held that the comment was not improper.  However, assuming that it was, the Tenth Circuit stated in *dicta* that the comment was harmless and did not deprive the defendant of a fair trial because the trial judge instructed the jury that statements and arguments by counsel are not evidence and were not to be considered in reaching a verdict.  *See id.* at 1558.

The caselaw relied upon by the Government not applicable because it does not address the propriety of closing argument.  Instead, these cases address whether sentences for drug convictions were proportional or too harsh.  *See Young v. Miller*, 883 F.2d 1276 (6th Cir. 1989); *United States v. Holland*, 729 F. Supp. 125 (D.D.C. 1990), ; *United States v. D'Anjou*, 16 F.3d 604 (4th Cir. 1994).  References in the body of the opinion to the nature or effect of drug use is immaterial to the issue presented here.

The Court finds that the comment likening drug dealers to vampires was improper.  The analogy infers that a Defendant should be convicted because of the serial consequences of his or her behavior in a societal context, not upon the evidence presented at trial of particular illegal acts.  Even if the analogy is apt in a social context, it has no place in the jury's determination of guilt on specific charges.

However, the Court does not find that this deprived the Defendants of a fair trial.  The jury was repeatedly instructed that the arguments of counsel are not evidence, and after the

17

comment was made, they were again contemporaneously instructed to base their verdict upon the evidence and the law rather than on the arguments of counsel.  The Court presumes that the jury followed these and all other instructions given.  *See Bland v. Sirmons*, 459 F.3d 999 (10th Cir. 2006) (jury presumed to follow instructions "even when there has been misleading argument" by the prosecutor).  Furthermore, as previously noted, the sophistication reflected in the jury verdicts suggests that this comment had no impermissible effect. Arguably, the comment was most pertinent to the alleged conspiracy, but the jury did not convict any of the Defendants on the conspiracy charge.  The Court therefore finds that the Defendants were not prejudiced by the prosecutor's comment likening drug dealers to vampires.  For these same reasons, the Court denies Ms. Cruthers' motion **(#826)** to dismiss Counts 3 and 20 on the basis that the prosecutor's comment was improper.

Mr. Montoya also argues that the prosecutor made five other improper comments during closing argument:

(1)    "I'm going to give you my reasons for why I think you should find these folks guilty. They're my reasons. They're based on logic, and I hope you base your decision on logic and common sense."

(2)    "When I was a kid, because I'm old, they used to have folks skate up to your car at the drive-ins. They did. I'm almost 60, so I can say this. They'd have them skate up, and they'd bring you your dinner. Hmm. Now those places wouldn't have worked unless they had somebody coming to the car, because people didn't get out of their to go in unless they didn't have a car. You walked up. But if you had a car, you waited. How successful would McCrack have been, this hotel from hell, without folks to serve you right from the car?"

(3)    "But it's, in the bizarre old world of the Alpine Rose, what they did for fun: shooting craps for 8 balls, shooting craps for 40s and 50s in the morning. I will venture to say no one here has ever experienced that. I'm from the south side of Chicago. I've never seen that. But it happened. The evidence shows it happened. The evidence showed things went on here that you've not seen before. . . .Worst

thing I've ever seen. But it's family life at the Alpine Rose."

(4)     "Colley: Lied all about his divorce. Yes, he did.  And you know, I've never been a
divorce lawyer; but I have been through a divorce. And I'm just going to tell you,
you hear some things you wouldn't expect during a divorce and the aftermath is
sometimes not pretty."

(5)     "It matters because that's what the country is built on, because I'm going to tell
you: As a black man, I don't want to be in court in a lot of places in this country
and have emotion decide my fate, and I don't want anybody to be in court and have
emotion and sympathy or lack of sympathy and some type of bias determine what's
going to happen to me, because that makes our country something that it  should
not be."

As to comments 1, 3, 4 and 5, Mr. Montoya made no contemporaneous objections at trial. He

contends that these comments were improper because they consisted of the prosecutor's personal

opinion and experiences, rather than the evidence, referred to racial issues that were not part of

the case, and were calculated to inflame the passions or prejudices of the jury.  As for comment 2,

Mr. Montoya made a contemporaneous objection; the Court instructed the jury to follow the

instructions it had been given.  Mr. Montoya also argues that these comments establish cumulative

error.

The Government responds that its comments were proper and responsive to arguments

made by defense counsel during closing arguments.  It also argues that to the extent Mr. Montoya

failed to make contemporaneous objections, the Court should apply a plain error standard of

review, and find none.

As to the single comment for which there was a contemporaneous objection, the standard

described *supra* applies.  However, any comments by the prosecutor for which no

contemporaneous objection was made are reviewed for plain (*i.e.,* obvious) error.  *United States

v. Young,* 470 U.S. 1, 6 (1985); *United States v. Olano*, 507 U.S. 725, 734 (1993).  "Plain error is

*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *United States v. Harlow*, 444 F.3d 1255, 1261 (10th Cir. 2006) (emphasis in original, quotations and citation omitted). When a defendant fails to object at trial, he or she bears the burden of establishing that the error impacted his or her substantial rights in that the outcome of the trial would have been different. *Id.*

As the Supreme Court stated in *Young*, 470 U.S. at 7, "Prosecutors sometimes breach their duty to refrain from overzealous conduct by commenting on the defendant's guilt and offering unsolicited personal views on the evidence." Consequently, ethical standards have been promulgated by the American Bar Association to guide prosecutors, and state that it is unprofessional for a prosecutor to express a "personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." *Id.* at 8 (quoting ABA Standards for Criminal Justice 3-5.8(b)(2d ed. 1980)).

A criminal conviction should not be overturned lightly simply because a prosecutor has made an improper remark. *Young*, 470 U.S. at 11. Rather, the remark is to be viewed in context to determine whether it affected the fairness of the trial. *Id.* In some instances, prosecutorial comment may be invited by the argument of opposing counsel; a court's function is to evaluate whether the comment probably affected the jury's ability to fairly judge the evidence in light of the arguments made by all counsel. *Id.* at 12. Improper, yet invited, prosecutorial comments are not condoned, but they may have no prejudicial effect, depending upon the circumstances. "[E]ach case must be examined independently with a view toward ascertaining whether there is reason to believe that the statement affected the ultimate verdict of the jury." *See Devine v. United States*, 403 F.2d 93, 96 (10th Cir. 1968).

The Tenth Circuit has issued several opinions addressing the scope of proper comment by a prosecutor during closing arguments. It emphatically disapproves when a prosecutor offers a personal opinion as to the guilt of an accused. *See United States v. Rios*, 611 F.2d 1335, 1343 (10th Cir. 1979). It is also improper when a prosecutor deliberately refers to evidence outside the record and discusses his personal knowledge of the same during closing argument. *See United States v. Latimer*, 511 F.2d 498, 502-03 (10th Cir. 1975). For all practical purposes, this amounts to testimony by the prosecutor. It is also error for a prosecutor to personally vouch for a witness. *See United States v. Ludwig*, 508 F.2d 140, 143 (10th Cir. 1974). Likewise, it is error for a prosecutor to opine as to his perception of the seriousness of the alleged violations. *See United States v. Perez*, 493 F.2d 1339, 1343 (10th Cir. 1974).

Giving the challenged comments their greatest detrimental quality, the Court considers each, in context, to determine whether they were improper. The Court then considers them together in assessment of cumulative error.

> **Comment 1: "I'm going to give you my reasons for why I think you should find these folks guilty. They're my reasons. They're based on logic, and I hope you base your decision on logic and common sense."**

In *Duvall v. Reynolds*, 139 F.3d 768, 794 (10th Cir. 1998), the Tenth Circuit concluded that a similar comment made by a prosecutor during closing argument was improper as a personal comment on the defendant's guilt. The comment in *Duvall* was: "[I]f you find from the evidence . . . and in my mind, in my way of thinking, it's more than beyond a reasonable doubt[.]" The Tenth Circuit concluded, however, that the comment did not deprive the defendant of due process because there was a contemporaneous objection and the court admonished the prosecutor in front

of the jury.

Standing alone, and in light of *Duvall*, comment 1 was improper.  However, the comment was not made in isolation but was instead made at the beginning of the Government's rebuttal argument:

> I want you to also listen to what the Judge said to you the first day in her instruction and again in Instruction 1, because Mr. Pena told you -- the first thing out of his mouth was what the lawyers say is not evidence; and I'd hope by this time in this trial, you understand why he said it. I hope it means something to you.
>
> I'm going to give you my reasons for why I think you should find these folks guilty. They're my reasons. They're based on logic, and I hope you base your decision on logic and common sense.
>
> I want you to think about those opening statements and maybe things will clear up a little bit.

The prosecutor was merely advising the jury that he was about to provide further argument as to why they should convict the Defendants, but that they were to be guided by the evidence, not the statements of the attorneys.  This is precisely what the Court instructed the jury at the start of the trial and immediately prior to the parties' closing arguments.  Neither Mr. Montoya nor Ms. Cruthers has demonstrated that either of their substantial rights was violated by this comment.

Therefore, the Court concludes that no prejudice was caused by this comment.

> **Comment 2: "When I was a kid, because I'm old, they used to have folks skate up to your car at the drive-ins. They did. I'm almost 60, so I can say this. They'd have them skate up, and they'd bring you your dinner. Hmm. Now those places wouldn't have worked unless they had somebody coming to the car, because people didn't get out of their to go in unless they didn't have a car. You walked up. But if you had a car, you waited. How successful would McCrack have been, this hotel from hell, without folks to serve you right from the car?"**

As for comment 2, Mr. Montoya objected to it during the closing argument.  His counsel stated:

> Your Honor, I'm sorry, and I apologize for interrupting Counsel; but his comment about folks to serve implies that the link can be met by other than just my client.  And that's really not the law, because if that were the law, then, for example, an organization like this has to have buyers and a buyer/seller relationship would be enough to establish a conspiracy. I did talk to counsel ahead about this, and I didn't think he was going to do to it. So I apologize for interrupting and I ask the Court –

The Court then stated to the jury:

> Ladies and gentlemen of the jury, follow the instructions that I have given you. Read them all, read them together. Consider the arguments in light of the instructions that I've given you.

Mr. Montoya's objection to comment 2 is premised upon how the comment bears upon the element of interdependence in the conspiracy count.  He contends that the comment impermissibly instructed the jury and caused a mistrial on the conspiracy count rather than an acquittal.  He therefore contends that a retrial of this count should be barred.  He also complains that the comment impermissibly consisted of a story from the prosecutor's personal life that was not part of the evidence.

It would have been preferable for the prosecutor to omit reference to himself in describing the drive-in restaurant experience.  To the extent that he mentioned himself, the comment is arguably improper.  However, in context, it is clear that the prosecutor was simply analogizing the drive-in restaurant experience to the Alpine Rose Motel.  He did not argue that the jury should premise its verdict upon anything other than the evidence presented during the trial or the instructions given by the Court.  The Court then instructed the jury to follow its instructions,

which the Court presumes it did.  Therefore, the comment resulted in no prejudice to any

Defendant.

> **Comment 3: "But it's, in the bizarre old world of the Alpine Rose, what they did for fun: shooting craps for 8 balls, shooting craps for 40s and 50s in the morning. I will venture to say no one here has ever experienced that. I'm from the south side of Chicago. I've never seen that. But it happened. The evidence shows it happened. The evidence showed things went on here that you've not seen before. . . .Worst thing I've ever seen. But it's family life at the Alpine Rose."**

In *Perez, supra*, the Tenth Circuit found a similar statement[9] by the prosecutor to be

"clearly improper."  However, the  statement did not require reversal because the error was

harmless in light of the substantial evidence of guilt presented during the trial.

In light of *Perez*, comment 3 was improper, but it was not plainly erroneous.  The

prosecutor's experience living on the south side of Chicago and his opinion that what occurred at

the Alpine Rose Motel was the "worst thing" he had ever seen would best have been left unsaid.

However, comment 3 was hyperbolic and related to the conspiracy charge, of which no Defendant

was convicted.  There is no basis for concluding that the jury failed to reach unanimous agreement

on the conspiracy count because of this comment.  The jury was repeatedly instructed that the

statements and arguments of counsel are not evidence.  In addition, as for the counts upon which

Mr. Montoya and Ms. Cruthers were convicted, there was substantial evidence to support them.

Consequently, neither Mr. Montoya nor Ms. Cruthers has shown that their substantial rights were

violated by this comment.

---

[9] In *Perez*, the prosecutor stated "This is one of the most flagrant violations of federal law in drug trafficking that I have seen in this city in recent years."

>**Comment 4: "Colley: Lied all about his divorce. Yes, he did.
>And you know, I've never been a divorce lawyer; but I have
>been through a divorce. And I'm just going to tell you, you
>hear some things you wouldn't expect during a divorce and the
>aftermath is sometimes not pretty."**

Comment 4 was also improper, because it consisted of the prosecutor's opinion that a

witness had lied, as well as the prosecutor's personal experience of going through a divorce.

However, the comment did not amount to plain error.  It related to an ancillary matter – Wilburn

Colley's divorce – and there is nothing in the jury's verdict which remotely suggests that the

jurors were influenced by the prosecutor's personal divorce experience in reaching a verdict, or

that they failed to follow the Court's instructions. Therefore, there has been no showing by the

Defendants that comment 4 violated their substantial rights or impacted the outcome of the trial in

any way.

>**Comment 5: "It matters because that's what the country is
>built on, because I'm going to tell you: As a black man, I don't
>want to be in court in a lot of places in this country and have
>emotion decide my fate, and I don't want anybody to be in
>court and have emotion and sympathy or lack of sympathy and
>some type of bias determine what's going to happen to me,
>because that makes our country something that it  should not
>be."**

Comment 5 was improper, but self-curing.  In a single breath, the prosecutor

impermissibly refers to his race and desires, but then explains that emotion and sympathy have no

role in the justice system.  Indeed, the comment was immediately preceded by the following

statement by the Government's attorney:

>A lot of nice people have gone to jail for doing things
>wrong. That's not the -- it's not the barometer.  That's not your job.
>Your job is to follow the instructions that the Judge gave you.
>Sympathy plays no part. Emotion plays no part. This is a time that

logic, common sense, going through the instructions, and doing the
right thing matters.

This was consistent with the Court's instruction to the jury that it was not to base its decision

upon sympathy, which the Court presumes the jury followed.  Therefore, the Defendants have

shown no violation of their substantial rights by the prosecutor's comment.

**Cumulative Error**

Mr. Montoya argues that, taken together, all of the prosecutor's improper comments

require a mistrial.  When several errors have been found to be harmless on an individual level, the

Court then conducts a cumulative error analysis.  *See United States v. Schuler*, 458 F.3d 1148,

1156 (10th Cir. 2006).  This requires the Court to consider the cumulative effect of the errors on

the outcome of the trial to determine whether they were prejudicial.  *See id.*

Having considered each of the comments within the context of the entire case, the Court

concludes that they were harmless.

To the extent that Mr. Montoya seeks a mistrial as to the distribution charges, the

prosecutor's comments cannot be said to have contributed to his conviction on those charges.

During both his opening statement and closing argument, Mr. Montoya's counsel essentially

conceded Mr. Montoya's guilt on those counts.  He cannot now leverage an acquittal or a new

trial on the basis that the prosecutor's comments somehow influenced that verdict.

Since the jury was unable to determine the conspiracy count as to Mr. Montoya, the only

harm he could have suffered would be that absent the comments, he would have been acquitted

on such count. Given the Court's numerous admonitions to the jury that the arguments of counsel

are not evidence, the presumption that the jury follows the Court's instructions, and the

conflicting evidence as to the conspiracy charge, the Court cannot presume that the jury's inability to render a unanimous verdict on the conspiracy count was due to these comments. Therefore, the Court finds that there is no prejudice that would preclude a retrial of that count.

### 4. Coercive Jury Instructions

The motions for mistrial challenge two instructions by the Court. The first is Instruction No. 35, which allowed the jury to return a verdict on any count against any defendant at any time. It provided in relevant part:

> You do not have to reach unanimous agreement on all charges against all defendants before returning a verdict on some of the charges. If you have reached unanimous agreement on some charges, you may return a verdict on those charges and then continue deliberating on the others. You do not have to do this, but you can if you wish. However, once you return a verdict on any charge, such verdict is final and you will not be able to change your minds about it later on. Your other option is to wait until the end of your deliberations and return a verdict on all charges at the same time.

The second is the *Allen* charge which the Court gave after the jury indicated it could not reach a verdict.

The Court rejects the challenge to Instruction No. 35. Pursuant to Fed. R. Crim. P. 31(b):

> (b) Partial Verdicts, Mistrial, and Retrial.
> (1) Multiple Defendants. If there are multiple defendants, the jury may return a verdict at any time during its deliberations as to any defendant about whom it has agreed.
> (2) Multiple Counts. If the jury cannot agree on all counts as to any defendant, the jury may return a verdict on those counts on which it has agreed.
> (3) Mistrial and Retrial. If the jury cannot agree on a verdict on one or more counts, the court may declare a mistrial on those counts. The government may retry any defendant on any count on which the jury could not agree.

It is within the jury's discretion to return a partial verdict, and the Court's instruction did not impinge upon that discretion. *See United States v. LaVallee*, 439 F.3d 670 (10th Cir. 2006). Therefore, Instruction No. 35 provides no basis for a mistrial.

As for the *Allen* charge, it also provides no basis for a mistrial. When a jury indicates that it is unable to reach a verdict, the trial court is not required to accept such representation and may require it to continue deliberating. *See United States v. Arney*, 248 F.3d 984, 989 (10th Cir. 2001). In such circumstances, the Tenth Circuit has approved the use of an *Allen* charge; this consists of an instruction which encourages the jury to reach a unanimous verdict, but without infringing upon the view of each individual juror. *See id.* at 987. However, the Tenth Circuit also cautions that an *Allen* charge should not be given if it would be coercive. *See id.* In evaluating the coerciveness of such a charge, the Tenth Circuit looks at the language of the instruction, whether it was presented alone or with other instructions, when it was given, and the length of the jury's subsequent deliberations. *See id.* at 988.

In the case at bar, the jury deliberated for just over one hour on June 27, 2006 before being discharged for the day. It returned the morning of June 28 and deliberated for the entire day. On June 29, they deliberated half a day. They deliberated the entire day of June 30. At the end of that day, they returned a verdict on the counts against Ms. Lozano.[10]

The jury returned on July 5 and continued their deliberations. After deliberating a few hours, the jury advised the Court by note that they believed they were "hung" on Count 3 as to

---

[10] At that juncture, counsel for Ms. Cruthers moved for a mistrial and objected to the Court's receipt of a partial verdict as reached by "undue influence." For the reasons previously stated, this request for a mistrial is denied because the jury was properly instructed regarding its discretion to enter a partial verdict.

Mr. Montoya and Ms. Cruthers.  Therefore, at that juncture, they had been deliberating for

approximately three days.  Over defense counsel's objections and complaints that an *Allen*

instruction would be coercive, the Court repeated the instruction that had been previously given

with counsels' agreement.  The only new instruction was with regard to deliberations to occur

that day.

> The instruction that governs this situation is one that has already been given to you.  It's Instruction No. 36.  It instructs you that it is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment.  You must each evaluate the evidence for yourself but only after impartially considering it with your fellow jurors.  In the course of your deliberations do not hesitate to reexamine your own views and change your opinion if you're convinced it is erroneous. However, do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

> You all diligently returned to this courthouse today after a long weekend to complete the job that was entrusted to you.  I ask that you return to the jury deliberation room and continue with that process with the hope that you will be able to reach a unanimous verdict.

At the end of the day, the jury again advised the Court that it could not reach a unanimous verdict

on Count 3.  Accordingly, the Court accepted the jury's verdict on the remaining counts and

declared a mistrial on Count 3.

There was no objection to Instruction 36.  With regard to the new advisement, even if in

error, it had no effect. The jurors had advised that they were in agreement on the distribution

counts but could not agree on the conspiracy count before the instruction was given.

They remained unable to agree on the conspiracy count.  Therefore the new instruction had no

coercive effect.

**IT IS THEREFORE ORDERED** that:

(1)      All motions for mistrial are **DENIED**.

(2)      Ms. Cruthers' motion (**#826**) to dismiss Counts 3 and 20 is **DENIED**.

(3)      Ms. Cruthers' motion (**#827**) for a separate trial is **DENIED**, as premature.

(4)      A hearing of not more than 15 minutes is set on the law and motion calendar for

**November 2, 2006** at **8:30 a.m.** in Courtroom A901 of the United States

Courthouse located at 901 19th Street, Denver, Colorado, for purposes of setting

a trial on the remaining counts against Mr. Montoya and Ms. Cruthers.

Dated this 11th day of October, 2006

**BY THE COURT:**

_Marcia S. Krieger_
_____
Marcia S. Krieger
United States District Judge